RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE  8/29/14
BY____Dm____

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| MOORE FAMILY RESOURCES, LLC, ET AL. | CIVIL ACTION NO. 12-2159 |
| versus | JUDGE TOM STAGG |
| QEP ENERGY COMPANY | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the court are three motions for summary judgment: one filed by plaintiff Moore Family Resources, LLC ("the LLC")[1], seeking judgment as a matter of law as to its claims against defendant QEP Energy Company ("QEP"); another filed by plaintiffs and counterdefendants Robert H. Moore and Betty S. Moore (collectively "the Moores")[2], seeking judgment in their favor as to their claim against QEP for attorney's fees and dismissal of QEP's remaining counterclaim against them; and the last filed by QEP seeking dismissal of the plaintiffs' claims against it or, alternatively, judgment on its counterclaim against the Moores. See Record Documents 30, 32, and

---

[1] The managing members of the LLC, Donald G. Moore and Martha Moore Reynolds, are also named plaintiffs herein.

[2] For purposes of the instant motions, the court will refer to the LLC and the Moores collectively as "the plaintiffs."

33. For the reasons set forth below, all of the motions are **DENIED**.

## I. BACKGROUND

This case arises from a convoluted dispute over an overpayment of royalties admittedly made in error by QEP to the Moores in January 2012. In June 2006, the Moores entered into an Oil, Gas, and Mineral lease with Petro-Chem Operating Company ("Petro-Chem"), covering approximately 433 acres owned by the Moores in Bienville Parish, Louisiana ("the lease"). See Record Document 32, Ex. 3. Petro-Chem subsequently transferred its interest in the Lease to QEP in October 2009. See id., Ex. 4.

The Moores formed the LLC in May 2011, and transferred all of their mineral rights, including those affected by the lease, to the LLC on June 17, 2011. See id., Exs. 6A and 7. The plaintiffs allege that their attorney, Robert A. Moore, mailed a letter to QEP on August 22, 2011, informing it that the Moores had transferred their mineral rights to the LLC and requesting that all future royalty payments be made to the LLC. See id., Ex. 8 and Statement of Uncontested Facts at ¶ 16. Moreover, the plaintiffs contend that a copy of the mineral deed transferring the Moores' interests to the LLC was included with the letter. See id., Statement of Uncontested Facts at ¶ 16. QEP admits to receiving the letter but claims there was no copy of the mineral deed, and that it did not receive a copy of the mineral deed until February 6, 2012.

See Record Document 30, Statement of Uncontested Facts at ¶¶ 3-5.[3] The parties agree that QEP began making royalty payments to the LLC in October 2011. See Record Document 30, Statement of Uncontested Facts at ¶ 9; Record Document 32, Statement of Uncontested Facts at ¶ 20.

Following a well unit survey in December 2011, it appears that someone in the accounting department at QEP determined that the Moores had been underpaid and were owed additional royalties. See Record Document 30, Statement of Uncontested Facts at ¶¶ 10-12. On January 25, 2012, QEP issued a royalty check to the Moores for $330,763.37.[4] See id., Statement of Uncontested Facts at ¶ 13. The parties agree that this was an overpayment caused by an error with QEP's accounting system that was not detected before the check was issued. See id., Statement of Uncontested Facts at ¶¶ 13-14; Record Document 32, Statement of Uncontested Facts at ¶ 24. QEP alleges that only $9,969.84 in royalties were actually due to the Moores,

---

[3] QEP contends that the Moores' rights were not assigned to the LLC until QEP received a copy of the mineral deed, pursuant to Paragraph 10 of the lease, which provides in part that any change in ownership "shall [not] be binding upon Lessee for any purpose until such person acquiring any interest has furnished Lessee, at its principal place of business, with a certified copy of the instrument . . . constituting his chain of title from the original Lessor." Record Document 32, Ex. 3.

[4] The plaintiffs allege the amount of the check was $330,767.37, but a copy of the check included as an exhibit to their motions clearly shows the amount was $330,763.37. See Record Document 32, Ex. 13.

3

resulting in an overpayment of $320,793.53. See Record Document 30, Statement of Uncontested Facts at ¶ 16.

The Moores cashed the check and refused to return any portion of the money. See id., Statement of Uncontested Facts at ¶¶ 17, 21; Record Document 32, Statement of Uncontested Facts at ¶ 29. The Moores claim that they were entitled to keep the overpaid royalties[5] based on Paragraph 21 of Exhibit A to the lease ("Paragraph 21").[6] See Record Document 32. QEP argues that Paragraph 21 was merely a waiver of the warranty of title. See Record Document 33. The LLC contends that, to recover the overpayment of royalties to the Moores that were not returned, QEP withheld $320,601.87 in royalty payments owed to the LLC from January to September 2012.[7] See Record Document 32, Statement of Uncontested Facts at ¶ 32.

---

[5] The court notes that its use of the term "overpaid royalties" is not meant to imply that the $320,601.87 was actually due to the Moores as royalties under the lease. The parties agree that this was an erroneous overpayment. The court merely uses the term "overpaid royalties" for simplicity.

[6] Paragraph 21 reads as follows: "This lease is granted and made without any warranty whatsoever and without any recourse against Lessor whatsoever, either express or implied, not even to the extent of any monies or benefits received under any of the terms hereof." Record Document 32, Ex. 3 at 6.

[7] In response to an interrogatory, QEP listed the negative balance of the LLC as $320,601.87. See Record Document 32, Ex. 16 at 2-3. Therefore, for purposes of the instant motions, the court will assume the Moores were overpaid $320,601.87 in royalties, despite QEP's assertion in its motion that the overpayment amount was $320,793.53.

The plaintiffs filed the instant lawsuit in state court against QEP, claiming it breached the lease by withholding royalty payments to the LLC. See Record Document 1-4. QEP removed the case to this court and filed an answer in which it asserted several counterclaims against the Moores. See Record Documents 1 and 7. The Moores filed a motion to dismiss QEP's counterclaims for fraud and attorney's fees. The court granted the Moores' motion and dismissed those counterclaims. See Record Documents 10, 24, and 25. Thereafter, the parties filed their respective motions for summary judgment—QEP seeks dismissal of the LLC's claims against it or, alternatively, judgment in its favor against the Moores on its counterclaim for recovery of the overpaid royalties; the LLC seeks judgment against QEP for double the amount of royalties withheld, a total of $641,203.74, plus attorney's fees; the Moores seek judgment on their claim against QEP for attorney's fees and dismissal of QEP's remaining counterclaim against them. See Record Documents 30, 32, and 33. Each party filed oppositions and replies to the respective motions. See Record Documents 39-42.

## II. LAW AND ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

## B.   Interpretation Of Contracts.[8]

Under Louisiana law, the "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Thus, when the language of a contract is clear and unambiguous, the fact that the parties may not have intended a particular result is irrelevant. See id.; Wooley v. Lucksinger, 61 So. 3d 507, 558 (La. 2011)("When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law.")(internal quotations omitted). "A contract is ambiguous only if its terms are unclear or susceptible to more than one interpretation, or the intent of the parties cannot be ascertained from the language employed." Gebreyesus v. F.C. Schaffer & Assocs., Inc., 204 F.3d 639, 643 (5th Cir. 2000).

As with general contracts, a mineral lease is the law between the parties and controls their respective rights and obligations, unless the lease violates either the law or public policy. See Caskey v. Kelly Oil Co., 737 So. 2d 1257, 1262 (La. 1999).

---

[8] This diversity case is governed by Louisiana substantive law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 585 S. Ct. 817 (1938); Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir. 2010).

The general rules of contract interpretation apply when interpreting mineral leases. See id. Unless otherwise prohibited by law or public policy, parties to a mineral lease have the freedom to renounce or modify any rights they have under the mineral code. See La. Rev. Stat. § 31:3.

### C. Whether The Lessor At The Time The Check Was Issued Was The LLC Or The Moores.

The parties dispute whether, at the time QEP issued the check to the Moores, the proper lessor was the Moores or the LLC. The Moores transferred their mineral rights to the LLC in June 2011 and informed QEP of the transfer in August 2011. QEP began making royalty payments to the LLC, rather than the Moores, in October 2011. Yet, QEP argues that the Moores' transfer of their rights under the lease to the LLC was not effective until QEP received a copy of the mineral deed in February 2012, after the check for $330,763.37 had been issued and cashed, pursuant to Paragraph 10 of the lease. The plaintiffs contend that QEP had actual notice of the transfer of ownership, and therefore their failure to comply with Paragraph 10 is not an issue. Additionally, the plaintiffs argue there is sufficient evidence to find that QEP received a copy of the mineral deed prior to the check being issued. See Record Document 40.

The court finds this issue is irrelevant. It is undisputed that the Moores were

8

owed additional royalties because, according to a survey relied upon by QEP, they were underpaid royalties during the time when they were the proper lessor. Regardless of whether their transfer of rights to the LLC was effective before or after the check was issued, the Moores were the proper recipient of the check because that money was making up for prior underpaid royalties. Moreover, all royalty payments were subject to the terms of the lease, and the assignment of rights to the LLC was subject to the rights and obligations of QEP as lessee. Therefore, the Moores, the LLC, and QEP all can rely upon the terms of the lease to resolve whether the Moores were entitled to keep the overpaid royalties and whether QEP has any recourse against either the Moores or the LLC.

### D. Whether The Moores Were Entitled To Keep The Overpaid Royalties Under The Terms Of The Lease.

Before addressing the main demand of the LLC, the court must determine whether or not the Moores were entitled to keep the overpaid royalties, totaling $320,601.87, that were included in the check they received from QEP. The plaintiffs rely exclusively on Paragraph 21, which states: "This lease is granted and made without any warranty whatsoever and without any recourse against Lessor whatsoever, either express or implied, not even to the extent of any monies or benefits received under any of the terms hereof." Record Document 32, Ex. 3 at 6. The

plaintiffs contend that Paragraph 21 constitutes a waiver on the part of the lessee, QEP, to recover any erroneously paid monies, including royalties. The Moores purportedly negotiated for this lessor-friendly clause with QEP's predecessor, Petro-Chem, because Petro-Chem wanted to avoid any litigation regarding a prior lease between it and the Moores. See Record Document 32, Statement of Material Facts at ¶¶ 6-7.[9] QEP argues that Paragraph 21 is merely a waiver of the warranty of title and thus has no bearing on the right to recover erroneously paid royalties. See Record Document 30.

After due consideration, the court finds that Paragraph 21 is unclear and ambiguous. It is not clear from the four corners of the lease what the scope of Paragraph 21 is. It is reasonably susceptible to a number of interpretations. Thus, the court cannot determine the intent of the parties solely from the terms of the lease. Moreover, the court finds there is a genuine dispute of material fact as to the intent of the parties with respect to Paragraph 21. QEP has introduced deposition testimony from Hunter Smith, who negotiated the terms of the lease on behalf of Petro-Chem with the Moores, stating that he understood Paragraph 21 to strictly be a waiver of the warranty of title. See Record Document 30, Deposition of Hunter Smith at 5-7.

---

[9] QEP does not contest these facts. See Record Document 39, Statement Of Contested Material Facts. Therefore, for purposes of the instant motions, these facts are deemed admitted. See Local Rule 56.2.

Conversely, the plaintiffs have introduced deposition testimony from their counsel, who negotiated the lease with Petro-Chem, and states that Paragraph 21 was intended to protect the plaintiffs from a lessee ever trying to reclaim any royalties. See Record Document 32, Ex. 2 at 51-55.

Because there is a genuine dispute of material fact as to the scope of Paragraph 21, neither QEP nor the Moores is entitled to judgment as to their claims regarding the overpaid royalties. As a result, the court cannot determine any remaining issues between the parties. Assuming that Paragraph 21 constituted a waiver of QEP's rights against the Moores, the likely conclusion would be that QEP did not have any right of recovery against the Moores and consequently had no right to withhold future royalties from the LLC to recover the money. However, if Paragraph 21 was merely a waiver of the warranty of title, then QEP had a valid claim to recover the overpayment from the Moores, and that claim would have transferred against the LLC when it became the lessor. Having found that a genuine dispute of material fact precludes answering the first question, though, the court is unable to adequately analyze the further arguments of the parties. Therefore, all of the parties' motions are **DENIED.**

## III. CONCLUSION

For the reasons stated herein, the LLC's motion is **DENIED**, the Moores' motion is **DENIED**, and QEP's motion is **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 29th day of August, 2014.

JUDGE TOM STAGG